**2016 BNH 001**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                Bk. No. 15-10056-BAH
                                                                                                      Chapter 13
Francis M. Williams,
         Debtor

*Sandra A. Kuhn, Esq.*
*Family Legal Services, P.C.*
*Concord, New Hampshire*
*Attorney for Debtor*

*Kay E. Drought, Esq.*
*New Hampshire Legal Assistance*
*Portsmouth, New Hampshire*
*Attorney for Creditor Ya Cai*

## MEMORANDUM OPINION

### I.  INTRODUCTION

The Court has before it a dispute between Francis M. Williams (the "Debtor") and Ya Cai, the Debtor's former wife.  Ya Cai filed a proof of claim in the Debtor's chapter 13 bankruptcy case ("POC 10"), which asserts a priority claim for a $20,000 debt arising from the parties' divorce.  The Debtor objected to the proof of claim (Doc. 19) (the "Objection"), contending that the claim is simply a general unsecured claim that may be discharged, upon completion of his chapter 13 plan, without paying the claim in full.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II. EVIDENTIARY RECORD**

The parties submitted a stipulated record and agreed this matter could be decided without an evidentiary hearing. The facts set forth below are drawn from the stipulated record, which included a joint stipulation of facts and several state court orders (one of which incorporates many of Ya Cai's requests for findings of fact and conclusion of law).

The parties also submitted five other documents, the admission of which they could not agree upon. These documents consist of (a) two financial affidavits executed by the parties in March 2014, in connection with the parties' final divorce hearing; (b) two financial affidavits executed by the parties in July 2015, in connection with a hearing on the parties' cross-motions to modify alimony; and (c) a state court order dated July 17, 2015, on the alimony modification issue. According to the United States Bankruptcy Appellate Panel for the First Circuit, the Court must "examine the circumstances that existed <u>at the time the obligations were created; current circumstances are not relevant.</u>" <u>Smith v. Pritchett (In re Smith)</u>, 398 B.R. 715, 721 (B.A.P. 1st Cir. 2008 (emphasis added), <u>aff'd</u> 586 F.3d 69 (1st Cir. 2009) (citing <u>Werthen v. Werthen (In re Werthen)</u>, 282 B.R. 553, 556 (B.A.P. 1st Cir. 2002), <u>aff'd</u>, 329 F.3d 269 (1st Cir. 2003)). The Court finds that the admission of evidence that post-dates the parties' divorce is irrelevant and should not be considered by the Court. However, even if the Court were to consider these post-dated documents, the Court's conclusion would be the same. The Court finds the financial affidavits executed in March 2014, just prior to the final divorce court hearing, are admissible and the Court may consider them in reaching its conclusion in this case.

**III. FACTS**

The Debtor and Ya Cai met through an online dating service in 2010. At the time, the Debtor was living in New Hampshire; Ya Cai was living in China. The couple married in China on January 17, 2011. It was a second marriage for both. Ya Cai and her daughter from her previous marriage moved to the United States on August 6, 2011. Ya Cai returned to China in December 2011, and she came back to the United States in March 2012. Since March 25, 2012, Ya Cai has remained in this country.

In connection with Ya Cai's status as an "intending immigrant," the Debtor signed an Affidavit of Support (U.S. Citizenship and Immigration Services Form I-864), in which he agreed to be Ya Cai's financial sponsor upon her actual immigration to the United States. By signing the Affidavit of Support, the Debtor committed, through a contract with the federal government, to be financially responsible for Ya Cai and her daughter. According to the Affidavit of Support, the Debtor's support obligation does not terminate upon divorce.

When Ya Cai arrived in this country, she did not speak English and brought with her only $150 in spending money. Ya Cai did not graduate from high school and has the Chinese educational equivalent of a G.E.D. In November 2012, Ya Cai secured a full-time job working as a laborer in Hudson, New Hampshire. The Debtor, on the other hand, has a PhD in political science and was employed as a professor at two universities during the couple's marriage and at the time of their divorce.

While married, the couple enjoyed a comfortable, but not extravagant, lifestyle. They lived in an apartment in Manchester, New Hampshire. The Debtor paid for all living expenses, including dining out and Ya Cai's clothing, cosmetics, and toiletries. He also gave Ya Cai approximately $50 in spending money each month.

Issues arose during the marriage, and on January 13, 2013, just a few days before their second wedding anniversary, the couple separated. On February 8, 2013, the Debtor filed for divorce; Ya Cai filed a cross-petition. After the couple's separation, Ya Cai and her daughter moved into a shelter environment and then into a rent-subsidized apartment. Ya Cai also applied for and received food stamps.

On March 14, 2014, the state court's family division (the "State Court") conducted a final hearing in the divorce action. It issued a narrative order (the "Narrative Order") and a final divorce decree (the "Divorce Decree") the next day. The State Court found that, at the time of the parties' divorce, Ya Cai was earning $10 per hour and was projected to earn approximately $20,000 per year while the Debtor was earning $8,044 per month on average, totaling $96,528 on an annual basis.[1] In its Narrative Order, the State Court indicated:

> In calculating alimony, in addition to the obligations arising from the Affidavit of Support, the Court is also guided by RSA 458:19. Alimony is granted on the basis of the recipient's need and the payor's ability to pay. In this case, although it is a very short marriage, the Affidavit of Support mandates that husband provide support for Wife [sic]. The Court, under NH law also considers that husband is a well-established professional, described as "exemplary" by one of his employers, has a very high level of education, several retirement accounts, and the potential to continue working. Wife has very limited education, does not speak (much) English yet (although is studying), has no assets to her name other than some undefined real estate in China that she acquired from her former husband in lieu of child support for their daughter. To her credit, she has obtained and maintained full-time employment since November 2012, although at a relatively low salary. Based upon her income, she is not able to support herself.

In the Divorce Decree, the Court ordered the Debtor to pay Ya Cai alimony in the amount of $1,500 per month until December 1, 2022. The Divorce Decree also provided in ¶ 9:

> Francis Williams shall also be responsible for insurance, maintenance, and rent due on the rented Mazda in Ya Cai's possession until such time as Ya Cai has purchased a replacement vehicle as described in Par. 11 below. Ya Cai is awarded the rented Mazda in her possession free and clear of any interest of Francis Williams, until such time as she

---

[1] The State Court indicated that it was underestimating the Debtor's likely income, not overestimating it, since the Debtor's annual income was approximately $114,000 in 2012 and $101,275 in 2013. The State Court's income projection "assumes that [the Debtor] is not working in the summer; he could supplement his income by doing so."

4

>    has purchased a replacement vehicle as described in Paragraph 11(b) [sic] below.  When she has purchased a replacement vehicle, Ya Cai will return the rented Mazda to Husband.

The State Court indicated further in ¶ 11(B):

>    Francis Williams shall withdraw sufficient funds from either or both of the above-mentioned retirement accounts or from any other source, so as to, after he pays income taxes and applicable withdrawal costs, pay Twenty Thousand Dollars ($20,000) to Ya Cai.  This property distribution is intended to provide Ya Cai with the value of a replacement vehicle for the 2012 Mazda which Francis Williams rented during the marriage.  Husband shall make this payment within 120 days of the effective date of decree.  The Mazda shall be returned to Husband within 60 days thereafter.

In the Narrative Order, the State Court explained that the $20,000 award was to enable Ya Cai to travel to work.[2]

The Debtor did not comply with the terms of the Divorce Decree that required him to pay Ya Cai $20,000 within 120 days of its effective date.  Apparently, instead, he continued to make lease payments on the Mazda pursuant to the terms of the lease[3] and Ya Cai continued to use the car.

The Debtor filed a chapter 13 bankruptcy petition on January 16, 2015.  He listed his ongoing $283 per month Mazda lease payment on Schedule J and listed the Mazda lease on Schedule G.  He also listed his obligation to pay Ya Cai $20,000 as a general unsecured claim on Schedule F.  The Debtor's chapter 13 plan did not make any provision for Ya Cai's $20,000 claim to be treated as a domestic support obligation ("DSO") or a priority claim.  The Court confirmed the Debtor's plan on March 23, 2015, before Ya Cai filed her claim on May 19, 2015, asserting priority status as a DSO.  After the chapter 13 trustee sought to dismiss the Debtor's case on the basis that his plan was underfunded due to the filing of Ya Cai's priority claim, the

---

[2]  "Finally, to enable Wife to travel to work, the Court finds it reasonable to award Wife a $20,000 property settlement to secure a new vehicle."

[3]  It appears from the proof of claim filed by the lessor in the Debtor's bankruptcy case that the Mazda car lease was set to expire on December 13, 2015.  POC 8.

5

Debtor filed the Objection, contending that Ya Cai's claim is not a DSO entitled to priority treatment, but rather is a general unsecured claim capable of being discharged in chapter 13 without payment in full.

## III. DISCUSSION

The Court must determine whether the Debtor's obligation under the Divorce Decree to pay Ya Cai $20,000 is a DSO within the meaning of 11 U.S.C. § 101(14A).[4]  If the debt is a DSO, then it would be entitled to priority status pursuant to 11 U.S.C. § 507(a)(1) and the Debtor's plan must provide for full payment of her claim in accordance with the provisions of 11 U.S.C. § 1322(a)(2).  Further, the debt would be excepted from the Debtor's discharge in accordance with 11 U.S.C. §§ 523(a)(5) and 1328(a)(2).

---

[4]  Section 101(14A) of the Bankruptcy Code defines "domestic support obligation" as:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record; or
>
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

6

Pursuant to the parties' stipulated record, the parties agree that (1) on the petition date the Debtor owed a debt to his former spouse; (2) the debt was established by a final divorce decree, which entered before the order for relief in this case; and (3) the debt has not been assigned to a nongovernmental entity. Thus, the parties agree that the conditions set forth in 11 U.S.C. § 101(14A)(A), (C), and (D) have been met, and that the only element in dispute is whether the debt owed to Ya Cai is one "in the nature of alimony, maintenance, or support" within the meaning of § 101(14A)(B). See In re Gambale, 512 B.R. 117, 122 (Bankr. D.N.H. 2014); In re Efron, 495 B.R. 166, 174 (Bankr. D.P.R. 2013).

In its decision in In re Gambale, 512 B.R. 117 (Bankr. D.N.H. 2014), the Court outlined the analysis it must make when deciding whether a debt is a DSO:

> "[P]ursuant to the statute, for an obligation to a former spouse to be considered a DSO, it must actually be in the nature of support." Smith, 586 F.3d at 73. The issue is one of federal bankruptcy law, not state law. Id. Accordingly, the labels used to describe the obligation in state court are not controlling for bankruptcy purposes. In re Werthen, 329 F.3d 269, 273 (1st Cir. 2003); Efron, 495 B.R. at 178. "The party seeking to have a debt determined a DSO and thus nondischargeable [under chapter 7 or 13] bears the burden of proving that the obligation is in the nature of support." Smith, 586 F.3d at 73 (citing Werthen, 329 F.3d at 271-72).
>
> Support has been described as "what is given to provide for the upkeep of the recipient spouse and children." Werthen, 329 F.3d at 273. The "principal" or "critical" issue is whether the divorce court judge "intended" a particular award to be for support or for something else. Smith, 586 F.3d at 74; Werthen, 329 F.3d at 273. The First Circuit Court of Appeals "has not adopted a specific multi-factor test" for courts to use to discern intent when making a determination as to whether a particular obligation is in the nature of support. Smith, 586 F.3d at 74. Instead, the court has stated that it is a "fact intensive" inquiry that depends on "the totality of the circumstances of a particular case." Id.
>
> Although a multi-factor test has not been adopted in the First Circuit, factors considered by other courts may inform the totality of the circumstances analysis that bankruptcy courts must undertake. Factors that other courts consider in making a determination as to whether a particular obligation is in the nature of support include:
>
>> (1) language and substance of the state court's order and thus the characterization of the payment in the decree and the context in which the disputed provisions appear; (2) the parties' financial circumstances at the time of the order and thus whether the recipient spouse actually needed spousal support at the time of the

7

>divorce; (3) whether an assumption of a debt or creation of an obligation has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are met and to ensure a home for the former spouse and any minor children; (4) whether the parties intended to create an obligation of support; (5) the function served by the obligation at the time of such order; (6) whether the labels given to the payments of the parties may be looked at as evidence of the parties' intent; (7) whether there was an imbalance in the relative income of the parties at the time of the divorce decree and thus whether the payment appears to balance disparate income; (8) whether the obligation terminates on the death or remarriage of either spouse; (9) whether the payments are made directly to the recipient spouse in a lump sum [or] are paid in installments over a substantial period of time; (10) whether the payments are to be made directly to the former spouse or to a third party.

Efron, 495 B.R. at 176 (collecting cases).

Gambale, 512 B.R. at 123-24 (citing and quoting Smith v. Pritchett (In re Smith), 586 F.3d 69 (1st Cir. 2009); Werthen v. Werthen (In re Werthen), 329 F.3d 269 (1st Cir. 2003); In re Efron, 495 B.R. 166 (Bankr. D.P.R. 2013)).

The Court must determine under the facts of this case whether the State Court's award of $20,000 to Ya Cai to purchase a replacement vehicle was "intended" to be for "support" or "for something else," like the division of jointly owned property. Smith, 398 B.R. at 721; Werthen, 329 F.3d at 273.

The Court first notes that, at the time the Divorce Decree entered, the parties were in vastly different financial situations. The Debtor was a highly educated professional teaching college courses and earning approximately $100,000 per year; Ya Cai was an individual with limited English skills working as a laborer and earning no more than $20,000 per year. The Debtor owned his own car, leased a vehicle for Ya Cai, and had several retirement accounts. Ya Cai had no significant assets (only a piece of real estate in China subject to some debt) and, after the couple's separation, she moved to a shelter and received food stamps. There can be no doubt that an economic imbalance existed at the time of the couple's divorce and that Ya Cai was in the weaker financial position. See Smith, 398 B.R. at 723 (inferring from the undisputed facts that

the wife was in the weaker financial position at the time the couple's separation agreement was approved). In its Narrative Order, the State Court indicated Ya Cai was in need of support, concluding that "Wife has a need, and Husband an ability to pay." Against this backdrop, the State Court made its awards.

In ¶ 9, the section of the Divorce Decree labeled "Motor Vehicles," the State Court awarded Ya Cai "the rented Mazda in her possession" requiring the Debtor to "be responsible for insurance, maintenance, and rent due on the rented Mazda … until such time as Ya Cai has purchased a replacement vehicle as described in Par. 11(b) [sic] below." In ¶ 11(B), in the section of the Divorce Decree labeled "Retirement Plans and Other Tax-Deferred Assets," the State Court ordered the Debtor to pay $20,000 to Ya Cai from funds withdrawn "from either or both of the above-mention retirement accounts or from any other source" and explained that "[t]his property distribution is intended to provide Ya Cai with the value of a replacement vehicle for the 2012 Mazda which [the Debtor] rented during the marriage." In the Narrative Order, the State Court ruled that "to enable Wife to travel to work, the Court finds it reasonable to award Wife a $20,000 property settlement to secure a new vehicle."

The Debtor argues that the language of the Divorce Decree is clear that the $20,000 obligation is a property settlement. Indeed, it appears in a section that is so labeled. As noted above, however, the State Court's labels are not controlling for bankruptcy purposes. See 11 U.S.C. § 101(14A)(B) (providing that courts should determine whether an obligation is in the nature of alimony, maintenance, or support "without regard to whether such debt is expressly so designated" in the state court proceeding). Accordingly, the Court can disregard the "property settlement" label if it finds that the purpose of the award was to provide support. The fact that the $20,000 award in this case is included in the "Retirement Plans and Other Tax-Deferred Assets" section of the Divorce Decree indicates that the Debtors' retirement accounts were one

9

source for the Debtor's payment, but they were not the only source.  As the court in Werthen concluded, "[t]he property-division label applied by the court seems most likely to have reflected no more than the mechanical fact that the payments were to come from identified existing resources."  Werthen, 329 F.3d at 274.

Moving beyond the Divorce Decree labels, the Court is faced with the issue of whether the $20,000 award is actually in the nature of support, i.e., was it awarded to provide for the upkeep of the recipient spouse and her child.  See Werthen, 329 F.3d at 273; Smith, 398 B.R. at 721.  Considering both the Divorce Decree and the Narrative Order together, the Court believes that the State Court intended the award as spousal support despite the labels given to it by the State Court (and even by Ya Cai herself in her request for findings of fact and rulings of law).[5] The structure of the award is what convinces the Court that the State Court was most interested in providing Ya Cai with continued support and not simply with an asset or property.

Ya Cai was first awarded the "rented Mazda" in ¶ 9 of the Divorce Decree.  At the time of the divorce, the rented Mazda vehicle was owned by the lessor and leased by the Debtor.  Ya Cai could not actually be awarded property not owned by the Debtor or Ya Cai.  Instead, what this award reflects is that the State Court wanted to ensure that the Debtor had a means of transportation.  The State Court permitted Ya Cai to continue driving the leased Mazda until she was able to procure a new vehicle and required the Debtor to make the leased vehicle payments, along with the associated insurance and maintenance costs, until Ya Cai purchased a replacement vehicle.  The purpose of this award was to ensure that Ya Cai could travel back and forth from Manchester to Hudson every day for work so that she could earn money to support herself and her daughter, and also to ensure that she could travel by car to meet her and her daughter's other

---

[5]  Ya Cai requested a ruling in ¶ 91 that "Ms. Cai is also entitled to receive $20,000 withdrawn Mr. Williams' retirement accounts to fund her purchase of a replacement vehicle for the rented Mazda.  Division of Personal Property."

daily needs, which would include getting her daughter to school, buying groceries and other necessities of life, and ensuring access to medical care.  See Clark v. Wellner (In re Clark), 207 B.R. 651, 655 (Bankr. E.D. Mo. 1997) (stating "[a] reliable means of transportation is particularly valuable to a family with minor children, and in this case is also necessary for the continued employments of the Plaintiff," concluding that the award of a car to the wife and the husband's obligation to pay the debt owed on the car and hold her harmless "is in the nature of support for the Plaintiff and the children of the Debtor"); Conrad v. Conrad (In re Conrad), 33 B.R. 601, 604 (Bankr. N.D. Ohio 1983) (explaining that "transportation is an essential commodity in providing for a family of minor children" and concluding that "[b]oth because of the continuing obligation to provide for the welfare of the former family and the necessity of a dependable vehicle for everyday and emergency transportation, this debt [of the husband to continue making payments on the car awarded to the wife] must be considered as an obligation which provides maintenance and support").  The Debtor has not challenged the award of the Mazda to Ya Cai.[6]

Second, Ya Cai was awarded funds to purchase a car to replace the Mazda.  This is the award that the Debtor challenges in the Bankruptcy Court.  He contends this award is part of a property settlement and does not constitute support within the meaning of the Bankruptcy Code.  The Debtor contends that the $20,000 obligation "was a one time payment to divide up vehicles."  In this Court's view, however, the State Court was not dividing up vehicles.  Instead, it issued an order that mandated the Debtor to provide Ya Cai with the ability to get back and forth to work:  first, by ordering the Debtor to pay ongoing lease, maintenance, and insurance costs associated with the Mazda; and second, by requiring the Debtor to pay $20,000 so that Ya

---

[6] While the record is not clear on this point, it appears that Ya Cai may still be in possession of the Mazda and that the Debtor has continued to make lease payments on the car while in bankruptcy (the lease payment was included on Schedule J), and thus the Debtor has continued to provide support to Ya Cai in the form of ongoing transportation.

11

Cai could secure a replacement vehicle. The Court agrees with Ya Cai that the replacement vehicle is the functional equivalent of the ongoing transportation assistance that the Debtor had been providing to her since the divorce through the car lease, insurance, and maintenance payments. The $20,000 serves in substance as transportation support, which the State Court found Ya Cai needed at the time of the divorce, given the economic disparity between the couple and Ya Cai's extremely limited financial resources. The effect of the two awards, i.e. the continued payments on the Mazda and the $20,000 to buy a replacement vehicle, was to "assuage need," Werthen, 329 F.3d at 273, and to enable Ya Cai to maintain "a basic or reasonable livelihood," Smith, 398 B.R. at 723.

In addition, the language of the Narrative Order—that the award was made so that Ya Cai would be able "to travel to work," which was critical to her continued employment in another town—reflects an intention that the award be treated as support for her and her daughter, not as a property award. If it really was just a property settlement and the State Court really was just dividing assets, Ya Cai would have been given $20,000 to do what she wanted with it. But, instead, the State Court ordered that it be used to buy a car because the State Court wanted to ensure that she had the ability to get back and forth to work so that she could earn a living, which would be supplemented by the Debtor's monthly alimony payments. Ya Cai was awarded very few assets in the divorce: a portion of the Debtor's retirement accounts that accumulated during the two short years of their marriage and some personal property. See Werthen, 329 F.3d at 273 ("[T]he need for ongoing support will often depend on how much property the less well-off spouse is given outright."). Based on the limited property award, Ya Cai had no ability to purchase a vehicle outright on her own. The State Court's award had the effect of balancing the significant disparity that existed between the parties with respect to their finances and income, further bolstering the Court's conclusion that the $20,000 payment is in the nature of support.

12

## IV.  CONCLUSION

Looking at the stipulated record as a whole, the Court concludes that Ya Cai has met her burden of establishing, under the totality of the circumstances, that the Debtor's obligation to pay her $20,000 to purchase a replacement vehicle is "in the nature of alimony, maintenance, or support" within the meaning of § 101(14A)(B), and therefore constitutes a DSO within the meaning of the Bankruptcy Code.  Because the debt is a DSO, the Debtor's Objection to Ya Cai's claim must be overruled.  POC 10 will be allowed as filed.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   January 7, 2016                    /s/ Bruce A. Harwood
                                           Bruce A. Harwood
                                           Chief Bankruptcy Judge